IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| IN RE: DENMAN TIRE, LLC | ) | CASE NO. 10-40855 |
| DBA DENMAN TIRE CORPORATION | | CHAPTER 7 |
| DEBTOR | ) | JUDGE KAY WOODS |
| | ) | MOTION OF THE TRUSTEE FOR AN |
| | | ORDER, PURSUANT TO SECTIONS |
| | ) | 105(a) AND 363(b) OF THE BANKRUPTCY |
| | | CODE, AUTHORIZING THE TRUSTEE TO |
| | ) | SELL CERTAIN ASSETS OF DENMAN |
| | | TIRE, LLC BY PRIVATE SALE |
| | ) | |

Pursuant to Sections 105(a) and 363(b) of Title 11 of the United States Code, (the "Bankruptcy Code"), Richard G. Zellers, Esq., the Chapter 7 Trustee appointed in this bankruptcy case (the "Trustee"), moves the Court for entry of an Order authorizing the Trustee to approve selling certain assets of Denman Tire, LLC ("Debtor" or "Denman") described in the Asset Purchase Agreement attached as Exhibit "A" ("Asset Agreement"), free and clear of all liens, claims, encumbrances and interests ("Liens") (the "Motion"). In support of the Motion, the Trustee respectfully represents:

### Jurisdiction

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### Memorandum in Support

2. On March 17, 2010 (the "Petition Date"), the Debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code.

1

3. On March 19, 2010, the United States Trustee appointed Richard G. Zellers, Esq., as the Trustee in the Debtor's Chapter 7 case.

4. The Debtor operated a manufacturing plant in Leavittsburg, Ohio, (a) manufacturing for other tire sellers private label tires and related products at its plant located at 400 Diehl South Road, Leavittsburg, Ohio, 44430, and elsewhere, and (b) making and selling tires and related products under its own name and tradenames.

5. As of the Petition Date, Debtor was party to a certain Loan Agreement (the "Existing Senior Credit Agreement") with The CIT Group/Commercial Services, Inc., 11 West 42nd St., 11th Floor, New York, New York 10036 (the "Bank") pursuant to which Bank committed to loan Debtor money. On information and belief, as of the Petition Date, the total due under the Existing Senior Credit Agreement was approximately $7.8 million. On information and belief, the Bank's loan under the Existing Senior Credit Agreement is secured by substantially all of Debtor's assets.

6. After due deliberation, the Trustee has determined that the sale contemplated herein is in the best interest of the Debtor's bankruptcy estate and the creditors. The Bank concurs.

## The Proposed Sale of the Acquired Assets

### A.    Agreement and Term Sheet

7. Authorized representatives of Soberay & Sons, Ltd ("Soberay") negotiated with the Trustee at arms-length and reached an agreement to purchase certain assets of the Debtor for a purchase price of $1.2 million in cash to be paid at closing. The Acquired Assets are described in the Asset Agreement.

2

8. The Trustee and Soberay executed the Asset Agreement, reflecting this negotiated agreement and describing the specific terms and conditions of the sale on April 28, 2010.

9. Soberay has provided the Trustee a bid deposit of $120,000.00 (the "Deposit").

## B. Terms of the Sale

10. Assets. Soberay will purchase certain assets of the Debtor, wherever located, including without limitation: To Debtor's interest in and to all of Debtor's equipment, machinery, all transformers, cables and heavy wire used in connection with the equipment, excepting the excluded property described in Schedule 1.2 attached to the Purchase Agreement.

11. Other Bids. Soberay and Trustee have agreed that, as a result of the pendency of the bankruptcy proceeding, Trustee will be required to entertain other offers from prospective bidders for the Acquired Assets, but time is of the essence. Accordingly, subject to approval of this Court, Trustee and Soberay have agreed that if other bids are received, they shall be subject to these terms and conditions:

(a) subsequent minimum overbids shall be in the amount of at least $50,000.00 each;

(b) each bidder submitting an overbid shall (1) provide written evidence satisfactory to Trustee, in his discretion, demonstrating that such bidder has the financial ability to consummate the proposed transaction at the overbid amount and (2) post a cash deposit in an amount equal to and not less than the Deposit; and

3

(c)     each bidder wishing to overbid shall submit a bid to the Trustee in writing that shall contain terms and conditions that are substantially identical to those set forth in the Asset Agreement (and, in any event, overbids shall not contain terms that are more burdensome to Trustee or contain more conditions than as provided in the Asset Agreement), and shall be accompanied by a copy of the Asset Agreement that is marked to show the changes to the Asset Agreement proposed by the competing bidder.  The deadline for submission of higher or better offers or any other bids will be 5:00 p.m. Eastern Daylight Time, seven (7) business days prior to the date of hearing set by this Court to approve the sale of the Acquired Assets (the "Sale Hearing") or as otherwise ordered by this Court.

12.     Auction.  If he receives at least one qualified bid for the Acquired Assets (other than from Soberay), Trustee shall conduct an Auction on the date of the Sale Hearing.  Only a qualified bidder who has submitted a qualified bid will be eligible to participate in the Auction; provided, however Soberay shall be deemed a qualified bidder that is entitled to participate in the Auction.  Trustee shall present to this Court for consideration and approval at the Sale Hearing the qualified bid which Trustee determines, in his reasonable discretion, constitutes the highest or otherwise best offer for the Acquired Assets.  If the Trustee has not received any other qualified bid for the Acquired Assets, he shall seek approval of the sale to Soberay.

13.     Closing.  Within twenty-four (24) hours of the Sale Hearing, Trustee shall return the Deposit of any unsuccessful bidder.  Pursuant to the terms of the Asset Agreement, upon determination and acceptance of the winning bid by a qualified bidder

4

at the Sale Hearing, the parties shall close the sale of the Acquired Assets within five(5) business days thereafter.

14.     Transfer Free of All Liens and Liability to Seller.   The Acquired Assets will be transferred free and clear of all liens, of any other person or entity.   Liens, shall attach to the sale proceeds, Soberay shall not be liable or responsible in any way for any liabilities or obligations of, or relating in any way to, Denman Tire or the Acquired Assets, whether fixed or contingent, known or unknown, liquidated or unliquidated, arising now or in the future.   Without limiting the foregoing, Soberay does not assume, and shall have no obligation or liability for, any liabilities or obligations of, or relating in any way to, Denman Tire or the Acquired Assets relating to any contracts or agreements, products, products liability claims, employees, employment matters, employee benefit plans, environmental matters, hazardous materials, antitrust matters, income taxes, withholding taxes with respect to employees, sales and use taxes, franchise and excise taxes, real and personal property taxes, litigation, contractual obligations, regulatory compliance or otherwise.

15.     Purchase Price and Closing.   The purchase price will be $1,200,000 (or such higher price received at the Auction), to be paid in cash at closing.   Closing will occur within five (5) business days of the Sale Hearing on a date and at a location agreed to by Soberay and the Trustee (the "Closing").

16.     Conditions.   Conditions to Closing will include:

(a)     the Acquired Assets being sold to Soberay shall be sold pursuant to an order entered by the Court, pursuant to 11 U.S.C. § 363, at the Sale Hearing;

5

(b)     all necessary consents and approvals from third parties, if any, must be obtained;

(c)     the absence of any litigation with respect to interests in the Acquired Assets or challenging the transaction (or an order transferring the Acquired Assets free and clear of such litigation or challenges); and

(d)     the absence of any material adverse change with respect to the Acquired Assets.

17.     Earnest Money Deposit.     Upon execution of the Asset Agreement, Soberay deposited $120,000.00 with the Trustee as earnest money, which funds will be credited toward the purchase price at Closing or refunded to Soberay if the Acquired Assets are not sold to Soberay.

18.     Expenses.     Each party will bear its own expenses related to the transaction.

19.     Exclusivity.     Prior to Closing, the Trustee will not seek or solicit the sale of the Acquired Assets to any person or entity other than Soberay.  However, notice of the sale of the Acquired Assets has been served upon all creditors and all parties who have expressed an interest in the Acquired Assets.  The Trustee shall advise any such persons that they may present higher and better bids, on the same terms as the Asset Agreement, but they may not be considered.

20.     Due Diligence.     Soberay waives any rights to due diligence as all due diligence necessary to this sale has been completed.

6

## Requested Relief

21.     Pursuant to Sections 105 and 363 of the Bankruptcy Code, and Bankruptcy Rules 401 and 6004, the Trustee seeks authority to sell the Acquired Assets by private sale in accordance with the terms and conditions of the Asset Agreement, free and clear of all liens, claims, encumbrances and interests.

### The Proposed Transactions is in the Best
### Interests of the Debtors, Their Estates and Creditors

22.     Section 105 of the Bankruptcy Code provides in pertinent part that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code.  11 U.S.C. § 105(a).  Bankruptcy Code Section 363(b) provides, in relevant part, that the Trustee "after notice and hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). "In determining whether to authorize the use, sale or lease of property of the estate under this section, courts require the debtor to show that a sound business purpose justifies such actions." Dai-ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.), 242 B.R. 147, 153 (D. Del. 1999) (citing Committee of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722 F2d 1063, 1071 (2d Cir. 1983) (setting forth the "sound business purpose" test in the context of a sale of assets under § 363(b)); see also In re Delaware & Hudson Ry. Co., 124 B.R. 169 (D. Del 1991)(adoption Lionel in this District in the context of a sale of assets).

23.     Courts have considered four factors in determining whether a sound business purpose exists: (i) whether a sound business reason exists for the proposed transaction; (ii) whether fair and reasonable consideration is provided; (iii) whether the

7

transaction has been proposed and negotiated in good faith; and (iv) whether adequate and reasonable notice is provided. Lionel, 722 F.2d at 1071; see also In re Abbotts Dairies, 788 F.2d 143, 145-47 (3d Cir. 1986) (implicitly adopting the articulated business justification test of Lionel and adding the "good faith" requirement); In re Delaware & Hudson Ry. Co., 124 B.R. at 176; Lubrizol Enters. V. Richmond Metal Finishers, Inc. (In re Richmond Metal Finishers, Inc.), 756 F2d 1043, 1047 (4th Cir. 1985), cert. denied, 475 U.S. 1057 (1986) (court should approve debtor's business decision unless that decision is the product of bad faith, whim, or caprice).

24.     The standards set forth above are plainly met in this case.  The proposed transaction will allow the Trustee to recover for the estate at least $1.2 million in cash paid immediately upon closing.  The assets being sold are depreciating assets with a limited resale market.  Absent this sale, the Bank will likely foreclose upon the Acquired Assets.  A foreclosure sale will most likely generate a significantly lower sale price for the Acquired Assets because, among other reasons, Soberay will not have the benefit of buying the Assets free and clear of liens, claims, encumbrances and interests under Section 363 of the Bankruptcy Code.  Such an outcome would prejudice the estate and ultimately diminish any recovery for creditors in this case.  For these reasons, the private sale contemplated herein is time sensitive and should be approved.

25.     Fair and reasonable is being provide for the Acquired Assets pursuant to the Asset Agreement.  The Purchase Price to be paid by Soberay for the Acquired Assets is satisfactory to the Bank.  Accordingly, the Trustee believes that the Purchase Price represents fair and reasonable consideration for the Acquired Assets.

8

26.     Further, the Asset Agreement is the product of good-faith, arm's-length negotiations between Soberay and the Trustee.

27.     Finally, adequate and reasonable notice of the proposed transaction has been provided. This Motion has been served on all parties scheduled by Debtor on the mailing matrix or having filed a request for service in this Chapter 7 case. This motion discloses the Trustee's intent to sell the Acquired Assets pursuant to 11 U.S.C. § 363(b). Accordingly, the Trustee believes that adequate notice has been provided under the circumstances.

### The Assets should be Sold Free and Clear of<br>Liens, Claims and Encumbrances

28.     Section 363(f) of the Bankruptcy Code provides that the Trustee may sell property free and clear of Liens, if one of the following conditions is satisfied.

(a)     applicable nonbankruptcy law permits the sale of such property free and clear of such interest;

(b)     the lienholder or claimholder consents;

(c)     such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(d)     such interest is in bona fide dispute; or

(e)     the lienholder or claimholder could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

29.     The court also may authorize the sale of a debtor's assets free and clear of any Liens, under 11 U.S.C. § 105. See e.g. In re Trans Worlds Airlines, Inc., No. 01-0056, 2001 Bankr. LEXIS 723 at *9, 10 (Bankr. D.Del. March 27, 2001) (stating that "bankruptcy courts have long had the authority to authorize the sale of estate assets free and clear even in the absence of § 363(f)"); Volvo White Truck Corp. v. Chambersburg Beverage, Inc. (In re White Motor Credit Corp.), 75 B.R. 944, 948

9

(Bankr. N.D. Ohio 1987) ("Authority to conduct such sales [free and clear of liens] is within the court's equitable powers when necessary to carry out the provisions of Title 11").

30.     This Court should authorize the Trustee to sell the Acquired Assets free and clear of any and all Liens, with such Liens to be transferred and attached to the net proceeds from the sale with the same validity and priority that such Liens had against the Debtors.

Respectfully submitted,

/s/Richard G. Zellers
RICHARD G. ZELLERS(0011764)
TRUSTEE
3810 STARR CENTRE DR.
CANFIELD, OH  44406
330-702-0780
330-702-0788 facsimile
zellersesq@cs.com

10

## PURCHASE AGREEMENT

THIS PURCHASE AGREEMENT (this "**Agreement**") is entered into as of the _____ day of _____, 2010 (the "**Effective Date**"), by and between DENMAN TIRE CORPORATION ("**Seller**") and SOBERAY & SONS, LTD. or its designee ("**Purchaser**"). Seller and Purchaser may be referred to herein individually as a "**Party**" or collectively as the "**Parties**."

WHEREAS, on March 17, 2010 (the "**Petition Date**"), Seller filed a voluntary Chapter 7 petition for relief under chapter 7 of title 11 of the United States Code (the "**Bankruptcy Code**") with the United States Bankruptcy Court for the Northern District of Ohio, at Case No. 10-40855-kw (the "**Bankruptcy Court**");

WHEREAS, Seller wishes to sell, transfer, convey, assign and deliver to Purchaser, in accordance with Sections 363 and 365 and other applicable provisions of the Bankruptcy Code, the Property (as defined below) of Seller upon the terms and subject to the conditions set forth in this Agreement;

WHEREAS, Purchaser wishes to purchase and take delivery of the Property upon such terms and subject to such conditions; and

WHEREAS, Purchaser requires that the Property be sold pursuant to a Sale Order (as defined below) of the Bankruptcy Court approving the sale of the Property under Section 363 of the Bankruptcy Code.

NOW, THEREFORE, in consideration of the premises and mutual promises herein, and in consideration of the representations, warranties, and covenants herein, the Parties agree as follows:

## ARTICLE I
## PURCHASE OF THE PROPERTY

1.1     Property to be Sold.  Upon the terms and subject to the conditions set forth in this Agreement, Seller shall sell, convey, assign, transfer and deliver to Purchaser, free and clear of all encumbrances and Purchaser shall purchase and acquire from Seller, Seller's right, title and interest in and to all of Seller's equipment, machinery, all transformers, cables and heavy wire used in connection with the equipment and machinery, and other tangible and intangible property other than the Excluded Property listed on **Schedule 1.2** (collectively, the "**Property**"):

1.2     Excluded Property.  Seller's property identified on **Schedule 1.2** shall be considered excluded property (the "**Excluded Property**") and is not part of the purchase contemplated hereunder, is excluded from the Property, and shall remain the property of Seller after Closing (as defined below).

1.3     Consideration.  The Purchaser will purchase the Property for a total consideration of One Million Two Hundred Thousand and 00/100 Dollars ($1,200,000.00) (the "**Purchase**

# "EXHIBIT A"

Price") payable by Purchaser at Closing. An earnest money deposit (the "Deposit") in the amount of ten percent (10%) of the Purchase Price will be paid by Purchaser to Seller, by wire transfer to the account identified in Section 6.5(a), within five (5) business days prior to the Bankruptcy Sale. If Purchaser is the Successful Bidder at the Bankruptcy Sale, the Deposit shall be credited against the Purchase Price at Closing. The Deposit shall be immediately refunded to Purchaser in the event that the Purchaser is not the Successful Bidder at the Bankruptcy Sale or in the event that the transaction contemplated by this Agreement does not close for any reason other than a breach of this Agreement by the Purchaser.

1.4     Grant of License.

(a)     For so long as Seller's case is open with the Bankruptcy Court, Seller grants Purchaser the right of ingress and egress to the real property and all structures located on the real property where the Property is located for the purpose of showing, selling and moving the Property purchased under this Agreement (the "License"). Seller shall provide Purchaser with 60 days prior written notice of the date that Seller's Bankruptcy Court case will be closed, such date being the termination date of the License; provided, however, that if Seller's case in the Bankruptcy Court will be closed within one year of the Closing Date, Seller shall provide Purchaser with 120 days prior written notice of the date that such case will be closed and that closing date will act as the License termination date. Purchaser acknowledges that any Property remaining on Seller's premises must be removed by the applicable License termination date. If Seller sells the premises or building where the Property is located, Seller shall give Purchaser 120 days prior written notice to remove the Property and vacate the premises. In no event shall Seller terminate the License for a period of one year from the date of the entry of an order authorizing Seller to enter into this Agreement.

(b)     Purchaser acknowledges and agrees that, except for the License, Purchaser makes no claim of right and has no interest or color of title in or to any part of any of the Seller's real property. Seller acknowledges and agrees that Purchaser shall have no liability of any kind or nature related to the real property in connection with the License. The Parties agree that Seller's revocation of the License in a way that breaches Section 1.4(a) would cause Purchaser irreparable harm and that upon any revocation of the License by Seller or Seller's successors and assigns in breach of Section 1.4(a) Purchaser shall be entitled to injunctive relief from a court of competent jurisdiction in order for Purchaser to receive the benefit of the transactions contemplated by this Agreement. In the event that a court of competent jurisdiction fails to provide Purchaser with the injunctive relief necessary for Purchaser to obtain the benefit bargained for under this Agreement, then Seller and Seller's successors and assigns shall indemnify Purchaser for all damages suffered by Purchaser as a result of Seller's or its successors' and assigns' actions, including, but not limited to, moving costs, storage costs for the remaining term of the License, legal fees and court costs.

(c)     For so long as the Property remains on Seller's premises, Purchaser shall maintain its own insurance on the Property and shall maintain a commercial general liability insurance policy in the amount of $1,000,000.00 per occurrence and $3,000,000.00 in the aggregate.

- 2 -

1.5    Seller's Liabilities.  Purchaser does not assume any of the liabilities of Seller, whether or not related to the Property, and Seller shall remain solely responsible for and retain all of its liabilities, including but not limited to any and all liabilities related to the environmental condition of Seller's real property.  Subject to applicable law, Seller hereby agrees to protect, defend, indemnify, and hold harmless Purchaser against any losses, liabilities, damages, costs, claims or expenses (including without limitation reasonable attorneys' fees) incurred by Purchaser as a result of any and all liabilities of Seller.  The foregoing indemnity shall survive Closing.

1.6    Closing.  The closing of the sale of the Property contemplated by this Agreement (the "Closing") shall take place at the offices of Richard G. Zellers and Associates, 3810 Starr Centre Drive, Canfield, Ohio, and shall occur consistent with timetables established by the Bankruptcy Court which are reasonably satisfactory to Seller and Purchaser, but in any event not later than thirty (30) days after the filing of the Sale Motion (as defined below) (the "Closing Date").

## ARTICLE II
## REPRESENTATIONS AND WARRANTIES OF SELLER

2.1    Seller represents warrants and covenants to Purchaser as follows with regard to the Property:

(a)    Ownership. Seller owns the Property and, if Purchaser is the successful bidder at the Bankruptcy Sale (the "Successful Bidder"), will transfer all of the Property to Purchaser at Closing, free and clear of all liens, claims encumbrances, and/or other obligations, consistent with the provisions of the Bankruptcy Code.

(b)    Authority.  Subject to Bankruptcy Court approval, Seller has the corporate power, legal capacity and authority to enter into and perform under this Agreement and all other agreements to which Seller is or will be a party that are required in order to consummate the transaction contemplated by this Agreement. The execution, delivery and performance of this Agreement has been duly and validly approved and authorized by all necessary corporate action on the part of Seller.

(c)    Sale Motion.  Seller will file the Sale Motion seeking entry of a Sale Order approving the sale of the Property and this Agreement and finding that Purchaser has purchased the Property for reasonably equivalent value, and in good faith pursuant to the terms of Section 363(m) of the Bankruptcy Code.

(d)    Assumption of Liabilities. There are no obligations and/or liabilities of any kind or nature whatsoever being assumed by Purchaser.

(e)    Adverse Conditions. Except as otherwise disclosed. Seller knows of no fact or event which does, or with the passage of time may, have a materially adverse effect on the Property.

- 3 -

(f)   **Property on Hand**. The Property will be on hand in the quantities disclosed to Purchaser and in the location identified as of the Effective Date.

(g)   **Consents and Approvals**. Any third-party approvals or consents which may be required for Seller to enter into this Agreement or to consummate the transaction contemplated hereby have been, or will prior to Closing be. obtained by Seller. This Agreement and all documents required hereby to be executed by Seller are and shall be valid. legally binding obligations of Seller. enforceable against Seller in accordance with their terms.

(h)   **Violations**. Seller has not received any notices of violations of any laws, ordinances. orders, or requirements of any governmental authority. agency. or officer having jurisdiction against or affecting the Property.

(i)   **Pending Proceedings**. Seller is not aware (nor has received notice) of any actions. investigations. suits. or proceedings (including arbitrations, grievances. judicial proceedings. administrative proceedings, and tax contests) pending, or to the best knowledge of Seller. threatened, with respect to the Property, except for products liability cases and personal injury cases that may be filed in courts throughout the United States.

(j)   **Possessory Rights**. Neither Seller nor. to the best of Seller's knowledge. any other party has entered into. and there are no outstanding offers to enter into, any contract, agreement, or understanding regarding the sale, transfer, lease, or exchange of the Property. or any part thereof, including, without limitation, purchase options, contracts for sale, or rights of first refusal. other than as set forth in this Agreement.

(k)   **Latent Defects**. To the best of Seller's knowledge, there are no latent defects in the Property. As used herein, a "latent defect" is one that could not be discovered by reasonable and customary inspection.

2.2   Seller agrees that the foregoing representations and warranties are true on the date of this Agreement and shall. as a condition to Closing. be true in all respects on the date of Closing. Purchaser acknowledges that other than the representations and warranties contained in this Agreement. the Property is being sold by Seller to Purchaser "AS-IS. WHERE-IS."

## ARTICLE III
## REPRESENTATIONS AND WARRANTIES OF PURCHASER

3.1   Purchaser represents warrants and covenants to Seller as follows:

(a)   **Organization**. Purchaser is duly organized, validly existing and in good standing under the laws of its state of incorporation and is authorized to carry out the transaction contemplated by this Agreement;

(b)   **Authority**. Purchaser has the corporate power, legal capacity and authority to enter into and perform its obligations under this Agreement, and all agreements to which Purchaser is or will be a party that are required to be executed in order to consummate the

- 4 -

transaction contemplated by this Agreement. The execution, delivery and performance of this Agreement has been duly and validly approved and authorized by person(s) so authorized by Purchaser. The execution and delivery of this Agreement and the consummation of the transaction contemplated hereby have been duly authorized by all necessary corporate action on the part of Purchaser and no other approval is required in connection with the consummation of the transaction contemplated hereby.

    (c) <u>Consents and Approvals</u>. Except for entry of the Sale Order, no consent, approval, order or authorization of, or registration, declaration or filing with any governmental authority or other person or entity is required to be obtained or made by Purchaser in connection with the execution and delivery of this Agreement or the consummation of the transaction contemplated hereby.

    (e) <u>Binding Obligation</u>. This Agreement is, or when executed by the Parties will be, a valid and binding obligation of Purchaser, enforceable against Purchaser in accordance with its terms, except as to the effect, if any, of applicable bankruptcy law.

    (f) <u>Violations</u>. Neither the execution and delivery of this Agreement nor the consummation of the transaction provided for herein, will conflict with or result in a termination, breach, impairment or violation of: (i) any provisions of Purchaser's charter documents, as currently in effect; or (ii) any order or legal requirement of a governmental authority applicable to Purchaser or any of its assets or properties.

  3.2 All of the representations of Purchaser shall be true at Closing.

**ARTICLE IV**
**SELLER COVENANTS**

  4.1 <u>Operation and Maintenance</u>. Between the Effective Date and Closing, Seller shall maintain the Property in its present order and condition, and deliver the Property at Closing in substantially the same condition it is in on the Effective Date, reasonable wear and tear excepted.

  4.2 <u>Utilities</u>. Upon the filing of the Sale Motion, Seller shall contact all utilities providing services to Seller's property and begin the process of shutting off such services.

  4.3 <u>Insurance</u>. Until Closing, Seller shall keep the Property insured against fire, vandalism and other loss, damage and destruction to the same extent as it has customarily insured the same. Seller's insurance policies shall not be assigned to Purchaser at Closing, and Purchaser shall be obligated to obtain its own insurance coverage related to the Property from and after Closing in the amounts specified in Section 1.4(b).

**ARTICLE V**
**PURCHASER COVENANTS**

  5.1 <u>Regulatory Approvals</u>. Purchaser will execute and file, or join in the execution and filing of, any application or other document that may be necessary in order to obtain any

- 5 -

governmental authorization, which may reasonably required. or which Seller may reasonably request, in connection with the consummation of the transactions provided for in this Agreement. Purchaser will use commercially reasonable efforts to obtain all such governmental authorizations.

5.2 Litigation. Purchaser will notify Seller in writing promptly after learning of any proceeding threatened or pending for the purpose or with the probable effect of enjoining or preventing the consummation of the transaction contemplated by this Agreement, or which would be reasonably expected to have a material adverse effect on the transaction contemplated by this Agreement.

5.3 Satisfaction of Conditions Precedent. Purchaser will use commercially reasonable efforts to satisfy or cause to be satisfied all of the conditions precedent which are set forth in Article VI on or before the Closing Date. Upon the terms and subject to the conditions of this Agreement, Purchaser will use commercially reasonable efforts to cause the transaction contemplated by this Agreement to be consummated, and, without limiting the generality of the foregoing, to obtain all consents and authorizations of third parties and to make all filings with, and give all notices to, third parties that may be necessary or reasonably required on its part in order to effect the transaction provided for herein.

## ARTICLE VI
## CONDITIONS TO OBLIGATIONS OF SELLER;
## PURCHASER'S CLOSING DELIVERIES

Seller's obligations hereunder are subject to the fulfillment or satisfaction of, on and as of the Closing Date, each of the following conditions (any one or more of which may be waived by Seller, but only in writing signed on behalf of Seller by an authorized agent):

6.1 Accuracy of Representations and Warranties. Each of the representations and warranties of Purchaser set forth in Article III of this Agreement shall be true and correct in all material respects on and as of the date hereof and on and as of the Closing Date with the same effect as though such representations and warranties had been made on and as of the Closing Date, except that to the extent such representations and warranties shall, to such extent, be true and correct as of the date hereof and on and as of such particular date as if made on and as of such particular date.

6.2 Covenants. Purchaser shall have performed and complied in all material respects with all of its covenants contained in Article V on or before the Closing Date.

6.3 Compliance with Law. There shall be no order by any governmental authority or any other fact or circumstance, which would prohibit or render illegal the transactions contemplated by this Agreement.

6.4 Absence of Litigation. No proceeding shall be pending which could reasonably be expected to have the effect of enjoining or preventing the consummation, or altering the terms, of the transaction provided for in this Agreement.

- 6 -

6.5     <u>Closing Deliveries</u>. Purchaser shall have delivered to Seller the following:

(a)     The Purchase Price, by wire transfer to the following:

Bank of New York Mellon
Account Number: 9200-75631614-65
Routing Number: 043000261

; and

(b)     Such other documents as may be reasonably required by Seller to consummate the transactions contemplated hereby.

**ARTICLE VII**
**<u>CONDITIONS TO OBLIGATIONS OF PURCHASER;</u>**
**<u>SELLER'S CLOSING DELIVERIES</u>**

The obligations of Purchaser hereunder are subject to the fulfillment or satisfaction on, and as of the Closing Date. of each of the following conditions (any one or more of which may be waived by Purchaser, but only in a writing signed on behalf of Purchaser by an authorized agent):

7.1     <u>Accuracy of Representations and Warranties</u>. All representations and warranties made by Seller in this Agreement shall be true and correct in all material respects (or in all respects in the case of any representation or warranty containing any materiality qualification of any kind) on and as of Closing, as if made on and as of such date. Seller shall deliver to Purchaser at Closing a certificate confirming that its representations and warranties are true and correct in all material respects (or in all respects in the case of any representation or warranty containing any materiality qualification of any kind) as of Closing.

7.2     <u>Performance of Obligations</u>. Seller shall have delivered all of the documents required to be delivered by Seller pursuant to this Agreement and shall have performed in all material respects all of its other obligations hereunder required to be performed by Closing and complied with all conditions, covenants and agreements required by this Agreement to be performed or complied with by Seller at or prior to Closing.

7.3     <u>Sale Order</u>. The Bankruptcy Court shall have entered the Sale Order.

7.4     <u>Closing Deliveries</u>. Seller shall, at the Closing. transfer the Property to Purchaser and shall execute and or deliver the following:

(a)     A bill of sale relating to the Property being transferred to Purchaser;

(b)     Seller's certificate certifying that all representations and warranties contained herein are true in all respects as of Closing; and

- 7 -

(c)     Such other documents as may be reasonably required by Purchaser to consummate the transactions contemplated hereby.

## ARTICLE VIII
## BANKRUPTCY PROCEEDING

8.1     <u>Sale Motion and Order.</u>  Seller shall file a motion (in form and substance acceptable to Purchaser) simultaneous with the execution of this Agreement (the "Sale Motion"). pursuant to Section 363 of the Bankruptcy Code to obtain Bankruptcy Court approval of the sale and this Agreement (the "Sale Order").  The Sale Order shall be reasonably acceptable to Purchaser.  Purchaser understands that the sale is subject to higher bids at the Bankruptcy Court sale confirmation hearing (the "Bankruptcy Sale") in accordance with the pre-approved Bidding Procedures.

8.2     <u>Bidding Procedures Motion and Order.</u>  Seller shall file a bidding procedures motion (in form and substance acceptable to Purchaser) simultaneous with the execution of this Agreement (the "Bidding Procedures Motion") seeking the Bankruptcy Court's approval of a process and procedure for competitive bidding at the Bankruptcy Sale, requiring without limitation that third party bidders pre-qualify in advance of the date of the Bankruptcy Sale hearing and that competing bids be made on the same terms and conditions as the starting bid (except for the increased Purchase Price) (collectively, the "Bidding Procedures").  All pre-qualified bidders shall be required to make an earnest money deposit in the amount of ten percent (10%) of such bidder's proposed purchase price within five (5) business days prior to the Bankruptcy Sale.  As a required component of the Bidding Procedures, Seller shall also seek the Bankruptcy Court's approval of Seller's designation of Purchaser as the "stalking-horse bidder" at the Bankruptcy Sale, and approval of Seller's reimbursement of Purchaser's fees, expenses and costs in accordance with applicable law, as follows:

(a)     <u>Break-Up Fee.</u>  In the event that (i) all of the conditions to Purchaser's obligation to close have been satisfied or waived by Purchaser. (ii) this Agreement has not been terminated prior to the Bankruptcy Sale hearing, (iii) a competitive bid is submitted by a qualified third party bidder in accordance with the court-approved Bidding Procedures. and (iv) such third party bidder submits the highest bid at the sale hearing, is approved by the Bankruptcy Court as the Successful Bidder to purchase the Property and the sale closes, Purchaser shall be entitled to payment at Closing of a break-up fee in an amount of $50,000.00 to reimburse Purchaser's expenditure of fees, expenses and costs in connection with the proposed sale and in serving as the stalking-horse bidder (collectively, the "Break-Up Fee").  If applicable, Seller will cause Lenders (as defined in the Sale Motion) to consent to the Break-Up Fee, and the payment of such fee as set forth herein.  The Break-Up Fee shall be subject to Bankruptcy Court order, after notice and hearing and, shall be entitled to priority as an administrative expense and paid at the time of Closing out of deposit monies made by the Successful Bidder whose bid is ultimately determined to be the highest and best offer by the Bankruptcy Court.

## ARTICLE IX
## TERMINATION

- 8 -

-

9.1    <u>Termination of Agreement</u>. The Parties may terminate this Agreement as provided below:

(a)    Purchaser and Seller may terminate this Agreement by mutual written consent at any time prior to Closing;

(b)    Purchaser may terminate this Agreement at its option by giving written notice to Seller at any time prior to the Closing if:

(i)    Seller has breached any representation, warranty, or covenant contained in Articles II and/or IV of this Agreement in any material respect, Purchaser has notified Seller of the breach, and the breach has continued without cure reasonably satisfactory to Purchaser for a period of ten (10) days after the notice of the breach, or Seller fails to consummate the transactions contemplated by this Agreement, notwithstanding the satisfaction or waiver of all of the conditions set forth in Article VI hereof; or

(ii)    Purchaser's conditions to Closing set forth in Article VII are not satisfactorily met in Purchaser's sole discretion, but such discretion shall not be unreasonably exercised; or

(iii)    The Closing shall not have occurred on or before June 30, 2010, unless the Parties agree otherwise (unless the failure results primarily from Purchaser itself breaching any representation, warranty, or covenant contained in this Agreement).

(c)    Seller may terminate this Agreement by giving written notice to Purchaser at any time prior to Closing if:

(i)    Purchaser has breached any representation, warranty, or covenant contained in Articles III and/or V of this Agreement in any material respect, Seller has notified Purchaser of the breach, and the breach has continued without cure reasonably satisfactory to Seller for a period of ten (10) days after the notice of the breach, or Purchaser fails to consummate the transaction contemplated by this Agreement, notwithstanding the satisfaction or waiver of all of the conditions set forth in Section VII hereof; or

(ii)    The Closing shall not have occurred on or before June 30, 2010, unless the Parties agree otherwise (unless the failure results primarily from Seller breaching any representation, warranty, or covenant contained in this Agreement).

## ARTICLE X
## RISK OF LOSS

10.1    <u>Casualty and Risk of Loss</u>.    If the Property is damaged by fire or other casualty prior to Closing to the extent that it will require $100,000 or more to repair such damage, as determined by an adjustor reasonably acceptable to Purchaser and Seller (such determination being the "**Repair Estimate**"), then Purchaser shall elect, by written notice to Seller within five (5) days following Purchaser's receipt of the Repair Estimate, either to (i) proceed to Closing.

- 9 -

whereupon (A) Seller shall assign to Purchaser Seller's right to receive any casualty insurance proceeds payable as a result of such casualty damage, up to the amount of the Repair Estimate; (B) Seller shall pay to Purchaser any amount, up to the deductible amount on Seller's casualty policy, by which the Repair Estimate exceeds the insurance proceeds; and (C) Purchaser shall not then be able to seek any other damages or compensation from Seller; or (ii) terminate this Agreement. If Purchaser fails to so provide such notice. Purchaser shall conclusively be deemed to have elected to proceed to the Closing rather than terminate. In the event of any casualty resulting in damage that will require less than $100,000 to repair, the parties shall proceed to Closing, whereupon (X) Seller shall assign to Purchaser Seller's right to receive any casualty insurance proceeds payable as a result of such casualty damage, up to the amount of the Repair Estimate, (Y) Seller shall pay to Purchaser any amount, up to the deductible amount on Seller's casualty policy, by which the Repair Estimate exceeds the insurance proceeds, and (Z) Purchaser shall not then be able to seek any other damages or compensation from Seller. In the event this Agreement is terminated pursuant to this Section. the Parties will be released and relieved of any and all liability or obligations under this Agreement, other than as expressly set forth herein. Notwithstanding the foregoing, until Closing, all risk of loss as to the Property shall remain with Seller.

## ARTICLE XI
## MISCELLANEOUS

11.1    Entire Agreement. This Agreement, the Schedules and Exhibits hereto constitute the entire understanding and agreement of the Parties hereto with respect to the subject matter hereof and supersedes all prior and contemporaneous agreements or understandings. inducements or conditions, express or implied, written or oral, between the Parties with respect to the subject matter hereof. The express terms hereof control and supersede any course of performance or usage of trade inconsistent with any of the terms hereof.

11.2    Assignment; Binding Upon Successors and Assigns. Neither Party hereto may assign any of its rights or obligations hereunder without the prior written consent of the other Party hereto. This Agreement will be binding upon and inure to the benefit of the Parties hereto and their respective successors and permitted assigns.

11.3    No Third Party Beneficiaries. No provisions of this Agreement are intended, nor will be interpreted, to provide or create any third party beneficiary rights or any other rights of any kind in any client. customer. affiliate, stockholder, partner, employee of any Party hereto or any other person or entity unless specifically provided otherwise herein, and, except as so provided, all provisions hereof will be personal solely between the Parties to this Agreement.

11.4    Severability. If any provision of this Agreement, or the application thereof. is for any reason held to any extent to be invalid or unenforceable, the remainder of this Agreement and application of such provision to other persons or circumstances will be interpreted so as reasonably to effect the intent of the Parties hereto. The Parties further agree to replace such unenforceable provision of this Agreement with a valid and enforceable provision that will achieve. to the extent possible, the economic, business and other purposes of the void or unenforceable provision.

- 10 -

11.5    Section Headings.  A reference to an Article, Section, Schedule or Exhibit will mean an Article or Section in, or a Schedule or Exhibit to, this Agreement, unless otherwise explicitly set forth herein.  The titles and headings in this Agreement are for reference purposes only and will not in any manner limit the construction of this Agreement.  For the purposes of such construction, this Agreement will be considered as a whole.

11.6    Amendment, Extension and Waivers.  At any time prior to the Closing Date, Purchaser and Seller may, to the extent legally allowed: (i) extend the time for performance of any of the obligations of the other Party; (ii) waive any inaccuracies in the representations and warranties made to such Party contained herein or in any document delivered pursuant hereto; and (iii) waive compliance with any of the agreements, covenants or conditions for the benefit of such Party contained herein.  Any term or provision of this Agreement may be amended at any time.  Any agreement to any amendment, extension or waiver will be valid only if set forth in writing and signed by all Parties.  The waiver by a Party of any breach hereof or default in the performance hereof will not be deemed to constitute a waiver of any other default or any succeeding breach or default.  The failure of any party to enforce any of the provisions hereof will not be construed to be a waiver of the right of such party thereafter to enforce such provisions.

11.7    Governing Law.  The validity of the Agreement, the construction of its terms, and the interpretation and enforcement of the rights and duties of the Parties to this Agreement will be exclusively governed by and construed in accordance with the laws of the State of Ohio without reference to that body of law relating to conflicts of law or choice of law.

11.8    Jurisdiction; Venue; Waiver of Jury Trial.

(a)    Each Party to this Agreement hereby agrees that the Bankruptcy Court shall have exclusive jurisdiction to hear and determine any claims or disputes between the Parties pertaining directly or indirectly to this Agreement or to any matter arising herefrom.  To the extent permitted by law, each Party hereby expressly submits and consents in advance to such jurisdiction in any action or proceeding commenced by the other Party, and agrees that service of such summons and complaint or other process or papers may be made by registered or certified mail addressed to such Party at the address to which notices are to be sent pursuant to this Agreement.  Each of the Parties waives any claim that the Bankruptcy Court is an inconvenient forum or an improper forum based on lack of venue.  The choice of forum set forth in this Section shall not be deemed to preclude the enforcement of any judgment obtained in such forum or the taking of any action to enforce the same in any other appropriate jurisdiction.

(b)    Each Party hereto waives, to the fullest extent permitted by applicable law, any right it may have to a trial by jury with respect to any litigation directly or indirectly arising out of, under or in connection with this Agreement.  Each Party hereto (i) certifies that no representative, agent or attorney of the other Party has represented, expressly or otherwise, that the other Party would not, in the event of litigation, seek to enforce the foregoing waiver and (ii) acknowledges that it and the other Party hereto have been induced to enter into this Agreement by, among other things, the mutual waivers and certifications in this Section.

- 11 -

**11.9** <u>Notices.</u> Any notice or other communication required or permitted to be given under this Agreement will be in writing or electronic written format, will be delivered personally or by mail or express delivery, postage prepaid, or by electronic mail or by facsimile transmission, and will be deemed given upon actual delivery, or upon transmission if sent via electronic mail or facsimile transmission, or, if mailed by registered or certified mail, on the third business day following deposit in the mail, addressed as follows:

If to Purchaser, to:

> Soberay & Sons, Ltd.
> Ron Soberay
> 5500 Walworth Ave.
> Cleveland, Ohio 44102
> Fax: (216) 334-2003
> Email: ron@soberaysons.com

> <u>with a copy to:</u>

> Harry W. Greenfield, Esq.
> Matthew Bradford, Esq.
> 1400 Fifth Third Center
> Cleveland, Ohio 44114
> Fax: (216) 579-1040
> Email: Greenfield@buckleyking.com
> Bradford@buckleyking.com

If to Seller, to:

> Richard Z. Zellers, Esq.
> Trustee in Bankruptcy for Denman Tire Corporation
> 3810 Starr Centre Dr.
> Canfield, Ohio 44406
> Fax: (330) 702-0788
> Email: zellersesq@cs.com

> <u>with a copy to:</u>

> Melody Dugic Gazda
> Attorney for Trustee in Bankruptcy for Denman Tire Corporation
> 3810 Starr Centre Dr.
> Canfield, Ohio 44406
> Fax: (330) 702-0788
> Email: mdg3810@cs.com

- 12 -

11.11   Counterparts.   This Agreement may be executed in counterparts, each of which will be an original as regards any Party whose name appears thereon and all of which together will constitute one and the same instrument, and may be delivered electronically.   This Agreement will become binding when one or more counterparts hereof, individually or taken together, bear the signatures of all Parties reflected hereon as signatories.

11.12   Incorporation of Recitals.   The Parties acknowledge the accuracy of the Recitals set forth at the beginning of this Agreement, which are incorporated into and made a part of this Agreement.

IN WITNESS WHEREOF, the Parties hereto have executed this Purchase Agreement as of the date first set forth above.

**SELLER**
**DENMAN TIRE CORPORATION**

By:_____
    Name:
    Title:

**PURCHASER**
**SOBERAY & SONS, LTD. (or its designee)**

By:_____
    Name: Ron Soberay
    Title: President

741835_6

- 13 -

**Schedule 1.2**

**Excluded Property**

The Excluded Property consists of the following property of Seller:

1. All inventory.
2. All accounts receivable.
3. All cash.
4. Any actions in the exclusive province of the Trustee in Bankruptcy.
5. The Denman line of tire molds, beads rings, specified related drums and associated tooling and spacers for such tire molds.
6. All trademarks, service-marks, trade names, and associated good will, patents, copyrights, internet URLs, telephone numbers, tire mold blueprints, plan specifications, recipes and other intellectual property of Seller.
7. The assets being sold to Coker Tire under the sale presently pending in the Bankruptcy Court and listed below.
8. All real property owned by Seller.

Seller's assets being sold to Coker Tire:

[Provide list]

- 14 -

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that I did send a copy of the foregoing Motion via regular U.S. Mail or electronic filing on this 18th day of May, 2010 to the following:

Office of the United States Trustee
Howard M. Metzenbaum U.S. Courthouse
201 Superior Avenue
Room 441
Cleveland, OH 44114

Denman Tire, LLC
400 Diehl South Road
Leavittsburg, OH  44430

Attorney Joseph C. Bishara
Roth, Blair, Roberts, Strasfeld & Lodge
100 Federal Plaza East
Suite 600
Youngstown, OH  44503

Attorney Kenneth A. Calderone
Hanna, Campbell & Powell, LLP
3737 Embassy Parkway
PO Box 5521
Akron, OH  44334

Attorney Kelly R. Cusick
Office of the Chief Counsel
1200 K. Street, NW
Washington, DC  20003

Attorney Saul Eisen
24100 Chagrin Blvd.
Beachwood, OH  44122

Attorney David M. Fusco
Schwarzwald McNair & Fusco LLP
616 Penton Media Building
1300 East Ninth Street
Cleveland, OH  44114

Attorney Brian J. Green
25101 Chagrin Blvd.
#220
Beachwood, OH  44122

Attorney Grant A. Mason
Miller & Mast
88 S. Monroe St.
Millersburg, OH  44654

Attorney Debra Ibarra Mayfield
Rymer, Moore, Jackson & Echols, PC
2801 Post Oak Boulevard
Suite 250
Houston, TX  77056

Attorney Jon A. Oldham
Oldham Kramer
195 South Main St.
Suite 300
Akron, OH  44308-1314

Attorney Carl D. Rafoth
100 East Federal Street, Ste 300
City Centre One Bldg.
Youngstown, OH  44503-1810

Attorney Timothy T. Reid
Norchi Forbes LLC
Commerce Park IV
23240 Chagrin Boulevard
Suite 600
Cleveland, OH  44122

Attorney Nathan M. Rymer
2801 Post Oak Boulevard
Suite 250
Houston, TX  77056

Attorney Gregory L. Taddonio
Reed Smith LLP
Reed Smith Centre
225 Fifth Avenue, Suite 1200
Pittsburgh, PA  15222

Attorney Matthew E. Tashman
Reed Smith LLP
1650 Market Street
2500 One Liberty Place
Philadelphia, PA  19103

Attorney Richard J. Thomas
6 Federal Plaza Central
Suite 1300
Youngstown, OH  44503

Attorney Thomas Jeffrey Tumlin
Novak, Robenalt & Pavlik, LLP
Skylight Office Tower, Suite 950
1660 West 2nd Street
Cleveland, OH 44113

/s/ Richard G. Zellers
**RICHARD G. ZELLERS (0011764)**
**MELODY DUGIC GAZDA (0047122)**